UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

Present: The Honorable **JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE**

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION FOR CONDITIONAL CLASS CERTIFICATION AND ISSUANCE OF NOTICE PURSUANT TO FAIR LABOR STANDARDS ACT, 29 U.S.C. § 216(B) (DKT. 23)**

I. **Introduction**

Noemi Russo ("Plaintiff") brought this putative collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, against Joamar, Inc. d/b/a Candy Cat Too ("Candy Cat Too"), Saul Perez ("S. Perez"), Indalecio J. Perez, Jr. ("J. Perez"), Does Managers 1–3 and Does 4–10 (collectively, "Defendants"). Dkt. 1. The Complaint alleges that Defendants misclassified Plaintiff and similarly situated dancers/entertainers as independent contractors rather than employees.

The Complaint advances the following 12 causes of action: (i) failure to pay minimum wage in violation of 29 U.S.C. § 206; (ii) failure to pay overtime wages in violation of 29 U.S.C. § 207; (iii) unlawful taking of tips in violation of 29 U.S.C. § 203; (iv) illegal kickbacks in violation of 29 C.F.R. § 531.35; (v) forced tip sharing in violation of 29 C.F.R. § 531.35; (vi) failure to pay minimum wage in violation of Cal. Lab. Code §§ 1194, 1197; (vii) failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, 1194, 1197; (viii) failure to furnish accurate wage statements in violation of Cal. Lab. Code § 226; (ix) waiting time penalties in violation of Cal. Lab. Code §§ 201-302; (x) failure to indemnify business expenses in violation of Cal. Lab. Code § 2802; (xi) compelled patronization of employer and/or other persons in violation of Cal. Lab. Code § 450; and (xii) unfair competition in violation of Cal Bus. & Prof. Code § 17200, *et seq*. Dkt. 1. ¶¶ 102–196.

On August 21, 2020, Plaintiff filed a Motion for Conditional Certification and Issuance of Notice Pursuant to Fair Labor Standards Act, 29 U.S.C. § 216(b). Dkt. 23 (the "Motion"). No opposition was timely filed. Dkt. 29. An Order issued providing Defendant a final opportunity to file an opposition by December 21, 2020. *Id.* The Order also provided that any opposition should be supported by a declaration by Defendants' counsel stating the reason that the opposition was not timely filed. *Id.*

On December 21, 2020, Defendants' counsel filed an opposition to the Motion. Dkt. 33 (the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | | Date | March 8, 2021 |
|---|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | | |

"Opposition").[1] Defendants' counsel filed the required declaration with the Opposition. Dkt. 32. Based on a review of the declaration, and in the interest of judicial and party efficiency, there is sufficient good cause to consider the Opposition. Plaintiff will not be prejudiced by Defendants' untimely Opposition because she has been provided sufficient time to reply, and did so on January 12, 2021. Dkt. 36 (the "Reply").

A hearing was held on the Motion on February 22, 2021. For the reasons stated in this Order, the Motion is **GRANTED-IN-PART**.

## II. Factual and Procedural Background

### A. The Parties

Defendants "operate an adult-oriented entertainment facility located at 6816 Winnetka Avenue, Canoga Park, California." Dkt. 1 ¶ 29. Defendant Candy Cat Too is allegedly a California Corporation with its principal place of business in California. *Id.* ¶ 15. Defendants S. Perez and J. Perez are allegedly owners and main managers of Candy Cat Too. *Id.* ¶¶ 16, 18. The Complaint alleges that they execute the policies regarding payment to, and management of dancers/entertainers who work for Candy Cat Too. *Id.* Both S. Perez and J. Perez are allegedly residents of California. *Id.*

Doe Managers 1–3 are allegedly "managers/owners who control the policies and enforce the policies related to employment at Candy Cat Too." *Id.* ¶ 20. The Complaint alleges that each Defendant is liable for the acts and omissions of all other Defendants. *Id.* ¶¶ 25–28.

Plaintiff is a California resident who worked for Defendants as a dancer/entertainer at the Winnetka Avenue location. *Id.* ¶¶ 13, 32, 35. The prospective collective action members are all current and former exotic dancers/entertainers who worked at the Winnetka Avenue location at any time beginning three years before the filing of the Complaint. *Id.* ¶¶ 14, 101. The Complaint alleges that the dancers/entertainers "dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude." *Id.* ¶ 34.

### B. Allegations in the Complaint

The Complaint alleges that, at all relevant times, Defendants were employers or joint employers of Plaintiff. *Id.* ¶ 29. The Complaint further alleges that, "Defendants categorized all dancers/entertainers employed by Defendants as 'independent contractors' and have refused to pay wages to such dancers." *Id.* ¶ 30.

The Complaint alleges that Defendants "exercised a great deal of operational and management control over [Candy Cat Too], particularly in the areas of terms and conditions of employment applicable to dancers and entertainers." *Id.* ¶ 31. The Complaint alleges that "Defendants set prices for all VIP performances" and also "set the daily cover charge for customers to enter the facility." *Id.* ¶¶ 38–39.

---

[1] Defendants filed identical oppositions to the Motion at Dkt. 30 and Dkt. 33. The only difference between them appears to be that the opposition at Dkt. 33 is accompanied by proposed orders. This Order cites to Dkt. 33 as the Opposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

Defendants allegedly "had complete control over which customers were allowed in the facility." *Id.* ¶ 39.

The Complaint alleges that Defendants "would demand that Plaintiff work four [] days a week and tell Plaintiff what time she was permitted to leave." *Id.* ¶ 37. It is alleged "Defendants placed Plaintiff on a schedule." *Id.* ¶ 42. During Plaintiff's shifts, Defendants allegedly "exercised significant control over" her. *Id.* ¶ 37. Specifically, the Complaint alleges that Defendants controlled the music for Plaintiff's performances and the "means and manner in which Plaintiff could perform." *Id.* ¶¶ 40–41. Defendants allegedly had the authority to suspend, fine, fire, or otherwise discipline dancers who did not comply with the rules regarding dancing. *Id.* ¶ 43. Defendants allegedly exercised this authority. *Id.* ¶ 44.

The Complaint alleges Defendants posted copies of rules in the employees' locker room regarding "late arrivals and early leaves and the corresponding fees for which performers would be responsible." *Id.* ¶ 49. The Complaint alleges Candy Cat Too provided and paid for all advertising and marketing efforts undertaken on its behalf. *Id.* ¶ 50. Candy Cat Too also allegedly paid for its facility; the maintenance, sound system, stages, and lights at the facility; and the beverages and inventory used at the facility. *Id.* ¶ 51.

The Complaint alleges that Defendants made all hiring decisions regarding wait staff, security, entertainers, managers, and other employees on the premises. *Id.* ¶ 52. It is further alleged that "Candy Cat Too's opportunity for profit and loss far exceeded Plaintiff's opportunity for profit and loss from work at Candy Cat Too." *Id.* ¶ 53.

It is alleged that "[n]ude dancing is an integral part of Candy Cat Too's operations" and that Candy Cat Too "needs dancers/entertainers to successfully and profitably operate the Candy Cat Too business model." *Id.* ¶¶ 54–55. The Complaint alleges the position of dancer/entertainer requires "no managerial skill," and indeed "little other skill or education, formal or otherwise." *Id.* ¶¶ 56–57. The Complaint alleges that the "only requirements to become an entertainer at Candy Cat Too are 'physical attributes' and the ability to dance seductively." *Id.* ¶ 58. It is alleged Plaintiff had "little or no formal dance training and experience before auditioning to dance at Candy Cat Too." *Id.*

The Complaint alleges that, "[a]lthough Defendant allowed dancers/entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises." *Id.* ¶ 45. It is alleged that, to comply with Candy Cat Too's "dress and appearance standards," Plaintiff typically spent one hour preparing for each shift, and was not paid wages for this time. *Id.* ¶¶ 45, 62. Similarly, the Complaint alleges that Plaintiff was not paid an hourly minimum wage for the time she was "required to wait at Candy Cat Too until the premises and the parking lot were cleared of customers." *Id.* ¶ 63.

The Complaint alleges "Defendants did not pay Plaintiff whatsoever for any hours worked at their establishment." *Id.* ¶ 46; *see also id.* ¶ 60. The Complaint also alleges that she was not paid overtime wages. *Id.* ¶ 61. Plaintiff was allegedly compensated exclusively through tips from Defendants' customers. *Id.* ¶¶ 46, 67. The Complaint alleges Defendants required Plaintiff to share her tips with Defendants and non-service employees including managers, disc jockeys and bouncers. *Id.* ¶¶ 47, 66.

The Complaint alleges that Defendants "failed to maintain records of wages, fines, fees, tips, and gratuities and/or service charges paid or received by dancers/entertainers." *Id.* ¶ 59. The Complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | | Date | March 8, 2021 |
|---|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | | |

alleges that Defendants' violations of the FLSA were willful and not based on a good faith and reasonable belief that Defendants had complied with the FLSA. *Id.* ¶ 69. The Complaint alleges that S. Perez and J. Perez are individually liable for failing to pay Plaintiff her wages. *Id.* ¶ 84.

The Complaint alleges that Plaintiff and the prospective collective action members are similarly situated. *Id.* ¶¶ 87–100. Specifically, the Complaint alleges that Plaintiff and the prospective collective action members "performed precisely the same job duties - dancing and entertaining at Candy Cat Too." *Id.* ¶ 70. The prospective collective action members were allegedly subject to the same control and rules as Plaintiff. *Id.* ¶¶ 64, 71–72. In addition, the prospective collective action members allegedly worked under the same pay structure as Plaintiff. *Id.* ¶ 64.

The Complaint also alleges:

> As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainty that numerous other current and former dancers and entertainers who worked at Candy Cat Too during the applicable limitations period would elect to participate in this action if provided notice of same.

*Id.* ¶ 75.

It is alleged that more than 100 dancers/entertainers have worked at Candy Cat Too during the three to five years prior to the filing of this action. *Id.* ¶ 76. As noted, the Complaint defines the collective class as "[a]ll of Defendants' current and former exotic dancers/entertainers who worked at the Candy Cat Too located in Canoga Park, California at any time starting three (3) years before this Complaint was filed." *Id.* ¶ 101.

    C.    The Motion

Plaintiff requests an Order conditionally certifying this action as a collective one, pursuant to 29 U.S.C. § 216(b), so that notice of the action may be provided to prospective collection action members. Dkt. 23 at 36; Dkt. 23-4 at 2. Plaintiff also requests an order that includes the following terms:

1. Directing Defendants to produce a list of dancers/entertainers who have worked at Candy Cat Too in the past three years, including their names, last-known mailing addresses, telephone numbers, email addresses, work locations, copies of driver's license to prove age, and dates worked at Candy Cat Too;
2. Authorizing Plaintiff to provide notice of the action to dancers/entertainers via email, text message, and U.S. Mail;
3. Authorizing Plaintiff to mail, email, and text reminders to all dancers who have not opted-in within 45 days of the first notice mailing;
4. Directing Defendants to post the notice and consent forms, conspicuously, on their website and Facebook page, and weekly on their Instagram;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

5. Directing Defendants to post the notice and consent form, in conspicuous color, on a laminated board at least three by five feet, in the dressing room(s) of Candy Cat Too and the entrance for the majority of dancers; and
6. Providing that the notice period will extend 90 days from the date of the order.

Dkt. 23-4 at 2–3. Plaintiff also requests that the statute of limitations be tolled during the notice period. *Id.* at 3; Dkt. 23 at 35.

A proposed notice form is attached as Exhibit 1 to the Motion. Dkt. 23-1. A proposed consent form is attached as Exhibit 2 to the Motion. Dkt. 23-2.

A declaration by Plaintiff has also been submitted in support of the Motion. Dkt. 23-3. Defendants filed evidentiary objections to the declaration. Dkt. 31. These objections are addressed in a separate Order.

**III.    Analysis**

    A.    Legal Standards

The FLSA "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA. A suit brought on behalf of other employees is known as a 'collective action.'" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989)). A collective action is "fundamentally different" than a class action that is brought pursuant to Fed. R. Civ. P. 23. *Id.* at 1529. A putative member of a class action must affirmatively opt-out of a certified class. Fed. R. Civ. P. 23(c)(2)(B)(v). However, a person who wishes to join a collective action must affirmatively opt-in. 29 U.S.C. § 216(b). Further, it is well settled that "the strict certification requirements of Rule 23 class actions do not apply to the more lenient certification requirements of FLSA collective actions." *Castro v. M&B Restaurant Grp.*, No. 13-CV-926 ODW (MANx), 2013 WL 3982766, at *1 (C.D. Cal. Aug. 1, 2013).

The only statutory requirement that must be satisfied by an employee seeking to bring a collective action is that he or she is "similarly situated" to the other employees whom he or she seeks to represent. 29 U.S.C. § 216(b). The Ninth Circuit has interpreted this language to require "that party plaintiffs must be alike with regard to some *material* aspect of their litigation." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018) (emphasis in original). "If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* (emphasis in original).

District courts in the Ninth Circuit have applied a two-step approach to approving certification of an FLSA collective action. *Id.* at 1108–10. "First, at or around the pleading stage, plaintiffs will typically move for preliminary certification." *Id.* at 1109. Preliminary certification is also referred to as conditional certification. The "'sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals." *Id.* at 1101 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). "Because non-parties to a collective action are not subject to claim preclusion, giving notice to potential plaintiffs of a collective action has less to do with the due process rights of the potential plaintiffs and more to do with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion.'" *Lillehagen v. Alorica, Inc.*, No. SACV 13-0092-DOC, 2014 WL 2009031, at *5 (C.D. Cal. May 15, 2014) (quoting *Hoffmann–La Roche,* 493 U.S. at 173).

Whether conditional certification should be granted turns on whether "the collective as defined in the complaint satisfies the 'similarly situated' requirement of section 216(b)." *Campbell*, 903 F.3d at 1109. "At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id.* The Ninth Circuit has characterized the standard for conditional certification as "lenient" and "loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.* The Court "does not resolve factual disputes, decide substantive issues on the merits or make credibility determinations . . . ." *Lewis v. Nev. Prop. 1, LLC*, No. 2:12-CV-01564-MMD, 2013 WL 237098, at *8 (D. Nev. Jan. 22, 2013).

The second step of certification occurs at or after the close of relevant discovery. *Campbell*, 903 F.3d at 1109. At that time, a defendant may "move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.* A decertification request requires district courts to "take a more exacting look at the plaintiffs' allegations and the record." *Id.* If a motion for decertification is granted, "the opt-in plaintiffs are dismissed without prejudice to the merits of their individual claims, and the original plaintiff is left to proceed alone." *Id.* at 1110.

    B.    Application

As an initial matter, Defendants request that this action be stayed, or a decision on the Motion be deferred, until mediation is complete. Dkt. 33 at 9. Defendants state that, "Pursuant to this Court's Order, the Parties are to complete mediation by February 9, 2021." *Id.* This is incorrect. The Scheduling Order sets July 12, 2021 as the last day to participate in a settlement conference or mediation. Dkt. 26. Further, Defendants cite no authority to support their request for a stay or deferral, nor do they adequately explain why a stay or deferral would promote party or judicial efficiency given that there is no showing that any mediation has been scheduled.

The Ninth Circuit has observed that the two-step certification process "has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record." *Campbell*, 903 F.3d at 1109–1110. Delaying a decision on preliminary certification would be inconsistent with "the advantage of ensuring early notice of plausible collective actions." Accordingly, the request for a stay and deferral of the Motion is **DENIED**.

    1.    <u>Conditional Certification</u>

For the purposes of conditional certification, Plaintiff has made a sufficient showing that she is similarly situated to all current and former dancers/entertainers who worked at Candy Cat Too during the past three years. Dkt. 1 ¶ 101. As noted, the conditional certification inquiry focuses on whether the Plaintiff and prospective collection action members are "alike with regard to some *material* aspect of their litigation." *Campbell*, 903 F.3d at 1114 (emphasis in original). Here, the essence of the claims is that Defendants misclassified Plaintiff and other dancers/entertainers as independent contractors rather

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

than employees and, accordingly, Defendants' treatment and compensation of the dancers/entertainers violated the corresponding labor laws. The "vast majority of district courts in similar cases involving exotic dancers have granted conditional class certification." *Degidio v. Crazy Horse Saloon & Rest., Inc*, No. 4:13-CV-02136-BHH, 2015 WL 5834280, at *19 (D.S.C. Sept. 30, 2015) (collecting cases).

Whether someone is an employee rather than an independent contractor turns on the following:

> [(i)] the degree of the alleged employer's right to control the manner in which the work is to be performed; [(ii)] the alleged employee's opportunity for profit or loss depending upon his managerial skill; [(iii)] the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; [(iv)] whether the service rendered requires a special skill; [(v)] the degree of permanence of the working relationship; and [(vi)] whether the service rendered is an integral part of the alleged employer's business.

*Flores v. Velocity Express*, LLC, 250 F. Supp. 3d 468, 478 (N.D. Cal. 2017).

The class proposed here consists of individuals who worked in the same role, and at the same location, as Plaintiff. Defendants concede that they "have classified all of [their] exotic dancers, the prospective class members, as 'independent contractors' and ha[ve] done so at least since [Candy Cat Too] was purchased by Defendants during 2019." Dkt. 33 at 21. Plaintiff declares that Defendants "dictated to [her] and all other exotic dancers/entertainers at Candy Cat Too how dancers performed their work, including tracking the number of dances, setting prices that customers would be charged per dance, setting fee splits, tip policies and house fee policies, and controlling when and how dancers performed. Dkt. 23-3 ¶ 13. Plaintiff also declares that "dancers/entertainers were required to complete their entire shift for any particular day they showed up," "'clock-in' for each shift by checking-in with a manager or DJ," and "participate in the stage rotation dictated by DJs or management." *Id.* ¶¶ 19–21.

Both Plaintiff's declaration and the plausible allegations of the Complaint support a conditional finding that Plaintiff and the Putative Class Members were subject to common management practices and rules. Common material factual questions are presented as to the implementation and enforcement of these practices and rules. There are also common material legal questions as to whether the practices and rules, if they exist and are enforced, make the dancers/entertainers employees rather than independent contractors. Accordingly, conditional certification is appropriate.

    2.  Equitable Tolling of the Statute of Limitations

The statute of limitations for filing a claim under the FLSA is two years, except where the cause of action arises out of a willful violation, for which the statute of limitations is three years. "For purposes of calculating the timeliness of a claim, claims for individual claimants who are not named plaintiffs are considered commenced when the claimant files a written consent to become a party plaintiff." *Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 WL 4082137, at *7; 29 U.S.C. § 256(b). Thus, a collective action under the FLSA differs from a Rule 23 class action, where the applicable statute of limitations is tolled for all putative class members once a complaint is filed.

Plaintiff seeks equitable tolling of the statute of limitations from the time the matter is conditionally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

certified through the end of the notice period. The FLSA statute of limitations may be tolled when equity warrants. *Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 761 (9th Cir. 1981) (abrogated on other grounds by *Hoffman-LaRoche*, Inc., 493 U.S. 165). Generally, "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). "The doctrine of equitable tolling serves to postpone the running of the statute of limitations, on a case-by-case basis. The decision to invoke equitable tolling in a particular case, therefore, lies solely within the discretion of the trial court." *Reyes v. Pier Enterprises Grp., Inc.,* No. EDCV152108JGBDTBX, 2017 WL 10619856, at *3 (C.D. Cal. June 9, 2017) (internal quotations and citations omitted).

Plaintiff argues that equitable tolling is appropriate "because, without it, numerous potential collective members will lose their claims due to nothing more than the passage of time." Dkt. 23 at 34. That is not a sufficient ground for equitable tolling. Plaintiff also states that "[m]any district courts in this [C]ircuit have equitably tolled the FLSA statute of limitations after entry of a stay order, while an appeal is pending, or because of lengthy delays in motions for conditional certification." *Id.* Neither a stay order nor an appeal has affected timing of the proceedings in this action. District courts have reached different outcomes on the issue of whether the time necessary for a consideration of motions may constitute grounds for equitable tolling. As one District Court explained:

> [W]hen Congress enacted Section 256 of the FLSA, it was aware that "time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period." *Woodard v. FedEx Freight E., Inc.,* 250 F.R.D. 178, 194 (M.D.Pa.2008). Consistent with Congressional design then, good faith motion practice by a defendant does not amount to wrongful conduct warranting equitable tolling of FLSA claims. *See, e.g., MacGregor v. Farmers Ins. Exch.,* 10–cv–03088, 2011 WL 2731227 (D.S.C. July 13, 2011) ("Congress could have avoided the foreseeable delay of good faith motions and judicial decision-making by patterning the statute of limitations for the FLSA after that of Rule 23 for class actions; however, they did not do so.").

*Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 WL 4082137, at *7 (denying motion for equitable tolling based on delay that resulted from a stay of discovery, a motion to dismiss, and defendants' refusal to provide prospective collection action members' contact information). However, "[c]ourts in [the District of Nevada] have equitably tolled the period of time it took for the court to rule on the motion for certification of a collective action." *Delara v. Diamond Resorts Int'l Mktg., Inc.*, No. 219CV00022APGNJK, 2020 WL 2085957, at *7 (D. Nev. Apr. 30, 2020).

Plaintiff also argues that equitable tolling is appropriate given the "court-slowdowns" that have resulted from the COVID-19 pandemic. There is some force to this argument. A district court entered an order that equitably tolled claims in an FLSA action where, in part due to court delays resulting from the COVID-19 pandemic, plaintiffs "waited over one-and-a-half years for an answer on the motions for conditional certification, both of which were filed within two weeks of the initial complaint." *See Klick v. Cenikor Found.*, No. 4:19-CV-1583, 2020 WL 7646301, at *4 (S.D. Tex. Dec. 23, 2020). Even before the COVID-19 pandemic, at least one district court applied equitable tolling where court delays slowed adjudication of a motion for conditional certification. *Warren v. Twin Islands, LLC*, No. 1:11-CV-00098-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | | Date | March 8, 2021 |
|---|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | | |

BLW, 2012 WL 346681, at *4 (D. Idaho Feb. 2, 2012). There, the decision on a plaintiff's motion for conditional certification was not issued until five months after it "was ripe for decision on September 9, 2011."

In this action, contrary to Plaintiff's assertion, COVID-19 has not meaningfully delayed adjudication of the Motion. Accordingly, *Adedapoidle-Tyehimba* is persuasive. Plaintiff has not made a sufficient basis to warrant equitable tolling in light of the language of the statute.

   3.  Notice Process and Terms

     a)  Privacy Concerns

Defendants argue that an Order requiring them to disclose the names and contact information of potential members of a collective action would invade their privacy rights. "This argument has been squarely rejected by numerous courts who have balanced the infringement of potential class members privacy against the representative plaintiff's need for the information." *Tomassi v. City of Los Angeles*, No. CV 08-1851 DSF SSX, 2008 WL 4722393, at *3 (C.D. Cal. Oct. 24, 2008); *see also Mitchell v. Acosta Sales, LLC*, No. CV 11-1796-GAF (OPX), 2011 WL 13309060, at *4 (C.D. Cal. Aug. 29, 2011) ("As for the privacy rights of prospective plaintiffs, the disclosure of mere contact information, such as names and addresses, does not unduly interfere with their right to privacy." (citing *Pioneer Electronics (USA), Inc. v. Super. Ct.*, 40 Cal. 4th 360, 372 (Cal. 2007)); *Deatrick v. Securitas Sec. Servs. USA, Inc.*, No. 13-CV-05016-JST, 2014 WL 5358723, at *5 (N.D. Cal. Oct. 20, 2014) ("Courts routinely require defendants to produce the contact information of putative class members.").

Defendants argue that the nature of the dancers/entertainers' work increases their interest in privacy. Dkt. 33 at 10. They cite *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 993 (N.D. Cal. 2015), where a Court granted a motion by exotic dancers to use pseudonyms as plaintiffs. *Id. Jane Roes 1-2* does not justify departing from the well-established rule that defendants must produce the name and contact information of prospective collective action members. Another court in this District recently ordered the production of such information in an action brought by exotic dancers/entertainers. *Angelica Mora v. Stars Planet, Inc. et al.*, 2:20-cv-00414-JFW-JC (C.D. Cal. Jan. 15, 2020), Dkt. 56 at 1 ("Defendants are ordered to produce to Plaintiffs' counsel, within fourteen (14) days of the date of this Order, a list of the dancers who have worked at Silver Reign Gentlemen's Club, including their names and last-known mailing addresses, telephone numbers, email addresses, copies of driver's licenses and dates they have worked at Silver Reign Gentlemen's Club.").

Defendants contend that, if they are required to produce these names and contact information, it should be to a third-party administrator that is engaged to provide notice. District courts have reached different outcomes on this issue. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1207 (N.D. Cal. 2013) ("Both sides cite district court cases deciding whether a third party administrator is desirable, with no discernible pattern underlying the decisions."); *Syed v. M-I, L.L.C.*, No. 1:12-CV-1718 AWI MJS, 2014 WL 6685966, at *8 (E.D. Cal. Nov. 26, 2014) ("Some courts have resisted providing contact information to plaintiffs' counsel at this stage 'given privacy concerns implicit in information derived from personnel records.' [Citations omitted.] However, that does not appear to be the practice of other courts, notably the Northern District. [Citations omitted.]").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

Given that there is no showing that any potential class members are aware of this proceeding, or will elect to opt-in, and given the privacy interests they have with respect to the work that they perform, using a third-party administrator to disseminate notice is warranted. This practice is common in class proceedings. Further, experienced administrators are well equipped to conduct the research necessary to locate potential collective action members whose notices may be returned as undeliverable.

Accordingly, on or before March 23, 2021, Plaintiff's counsel shall retain a qualified and experienced third-party administrator to provide notice to the potential collective action members. The terms of the contract between Plaintiff's counsel and the administrator shall provide that the administrator will preserve the confidentiality of any information it receives about the identities or contact information as to any potential class members, and that the administrator will not disclose that information except as required to provide the initial notice and follow-up notice, or as required by law.

On or before March 30, 2021, Defendants shall produce to the administrator retained by Plaintiff's counsel a list of dancers who have worked at Candy Cat Too in the past three years, including the best available information about their actual names, last-known mailing addresses, email addresses, copies of driver's licenses, and dates worked at Candy Cat Too.

> b)    Restrictions on Plaintiff's Counsel's Communications with Potential Opt-In Plaintiffs

The Supreme Court has "recognized that a trial court has a substantial interest in communications that are mailed for single actions involving multiple parties." *Hoffmann-La Roche Inc.*, 493 U.S. at 171. It has explained that:

> Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time. One of the most significant insights that skilled trial judges have gained in recent years is the wisdom and necessity for early judicial intervention in the management of litigation. . . . The court is not limited to waiting passively for objections about the manner in which the consents were obtained. By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner.

*Id.* at 171–72. "In the absence of any statutory directive, the proper means of managing a collective action—the form and timing of notice, the timing of motions, the extent of discovery before decertification is addressed—is largely a question of 'case management,' and thus a subject of substantial judicial discretion." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018) (internal citation omitted).

Defendants request an order providing that "Plaintiff's counsel can only communicate with potential opt-in plaintiffs with the express approval of this Court." Dkt. 33 at 11. The Supreme Court has expressly rejected such a blanket ban on communications. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 103–104 (1981).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | | Date | March 8, 2021 |
|---|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | | |

In *Gulf Oil*, the Court found a district court erred when it banned communications in a Fed. R. Civ. P. 23 class action "between parties or their counsel and any actual or potential class member who was not a formal party, without the prior approval of the court." *Id.* at 95. The ban was improper notwithstanding that it provided exemptions for "attorney-client communications initiated by the client, and communications in the regular course of business." *Id.* The Court held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. "It is not enough that a potentially coercive situation exists. . . . The court cannot issue an order limiting communication with putative class members without evidence that a potential for serious abuse exists." *Amaraut v. Sprint/United Mgmt. Co.*, No. 3:19-CV-411-WQH-AHG, 2020 WL 1820120, at *2 (S.D. Cal. Apr. 10, 2020) (denying, in a hybrid Fed. R. Civ. P. 23 and FLSA action, a Motion for Order Limiting Plaintiffs' and Plaintiffs' Counsel's Communications with Class and Collective Members).

In the context of an FLSA collective action, one district court has observed that "lawyers are perfectly entitled to reach out to potential collective members – via notice or otherwise – without first seeking court approval." *See Soto v. O.C. Commc'ns, Inc.*, 319 F. Supp. 3d 1165, 1167 (N.D. Cal. 2018) (Chhabria, J.). *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1082 (C.D. Cal. 2002), held a defendant employer may communicate with potential collective action members unless the communication undermines or contradicts the notice approved by the court. "Based on the provisions of § 216(b) and the similar Rule 23 pre-certification situation, the Court concludes there is no prohibition against pre-'opt-in' communication with a § 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice. If an undermining or contradictory communication is sent, the Court can control the proceedings through sanctions, requiring payment for a curative notice, regulation of future ex parte communications, or other appropriate orders." *Id.* at 1085.

Defendants have not provided sufficient evidence to support "specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. Therefore, it is inappropriate to issue an Order limiting communications by Plaintiff's counsel with prospective members of the proposed collective class.

        c)        Means of Disseminating Notice

Plaintiff requests an Order authorizing notice by email, text message, and U.S. Mail. Dkt. 23-4. Plaintiff also requests an Order directing defendants to post the notice and consent forms on their website, social media, the dressing room(s) of Candy Cat Too, and the entrance where most dancers enter the premises. *Id.* Defendants oppose notice being provided via email, text, or on their website and social media. Dkt. 33 at 12–13.

Plaintiffs argue that, "[t]o meet the constitutional guarantee of procedural due process, notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Dkt. 36 at 12–13 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)). However, that is the standard for providing notice under Fed. R. Civ. P. 23. It is based on the rule that class members who do not opt out are bound by the outcome of the proceedings. *Eisen*, 417 at 173–174. As noted, "[b]ecause non-parties to a collective action are not subject to claim preclusion, giving notice to potential plaintiffs of a collective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

action has less to do with the due process rights of the potential plaintiffs and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion.'" *Lillehagen v. Alorica, Inc.*, No. SACV 13-0092-DOC, 2014 WL 2009031, at *5 (C.D. Cal. May 15, 2014) (quoting *Hoffmann-La Roche,* 493 U.S. at 173).

Potential collective action members should receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc.*, 493 U.S. at 170 (1989). Therefore, it is appropriate to send notice by U.S. Mail and email in the form that is set forth at the end of this Order. Although Plaintiff requests that notice be sent by text message, she does not propose language for such a text message notice. Moreover, maintaining copies of text messages is more difficult than doing so with respect to items that are mailed or sent by e-mail. Nor has Plaintiff shown that notice by a text message would be more effective than more traditional means of notice. Similarly, there is an insufficient showing that notice via Defendants' website or social media is appropriate. Defendants persuasively argue that their online platforms "are specifically tailored for their customers" and "do not contain information for the benefit of entertainers." Dkt. 33 at 13. Providing notice by U.S. Mail and email appropriately balances the need to provide accurate and timely notice with the potential adverse effects of such notice.

Defendants do not dispute that the notice and consent form should be posted, in conspicuous color, on a laminated board at least three by five feet, in the dressing room(s) of Candy Cat Too and the entrance for the majority of dancers. This means of notice is also appropriate and is adopted while there are in-person operations at Candy Cat Too during any portion of the notice period.

                    d)      Defendants' Proposed Line Edits to Plaintiff's Notice

"The Supreme Court has abstained from delineating the proposed contents of a § 216(b) notice, noting that such details should be left to the broad discretion of the trial court." *Webb v. Alpha & Omega Servs. Inc.*, No. 516CV01609RGKKK, 2016 WL 9110160, at *7 (C.D. Cal. Dec. 14, 2016) (internal quotations omitted) (citing *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 106 (S.D.N.Y. 2003)). Based on a review of the proposed notice and consent form, as well as Defendant's objections, a revised version is below.

## IV. Conclusion

For the reasons stated in this Order, the Motion is **GRANTED-IN-PART**. This action is conditionally certified as a collective one, with the conditional class comprised of all entertainers/dancers who have performed at Candy Cat Too in the past three years. It is further ordered:
1. On or before March 23, 2021, Plaintiff's counsel shall retain a qualified and experienced third-party administrator to provide notice to the potential collective action members. The terms of the contract between Plaintiff's counsel and the administrator shall provide that the administrator will preserve the confidentiality of any information it receives about the identities or contact information as to any potential class members, and that the administrator will not disclose that information except as required to provide the initial notice and follow-up notice, or as required by law.
2. On or before March 30, 2021, Defendants shall produce to the administrator retained by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

| | |
|---|---|
| | Plaintiff's counsel, a list of dancers who have worked at Candy Cat Too in the past three years, including the best available information about their actual names, last-known mailing addresses, email addresses, copies of driver's licenses, and dates worked at Candy Cat Too. |
| 3. | The notice period will extend 90 days from the date that Defendants produce to the administrator the information required by this Order; |
| 4. | During the notice period, Defendants shall post the notice and consent form, in conspicuous color, on a laminated board at least three feet by five feet, in the dressing room(s) of Candy Cat Too and the entrance for the majority of dancers, provided that in-person operations take place at Candy Cat Too for any portion of the notice period; |
| 5. | The administrator retained by Plaintiff's counsel shall send the notice and consent form attached to this Order, by email and U.S. Mail, to all potential members of the conditional class; and |
| 6. | The administrator retained by Plaintiff's counsel shall send a reminder of the notice and consent form attached to this Order, by email and U.S. mail, to all potential members of the conditional class who have not opted-in or otherwise responded within 40 days of when the first notice was sent. |

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

**ATTACHMENT**

**FEDERAL COURT- AUTHORIZED NOTICE OF YOUR RIGHT TO "OPT-IN" TO CLAIMS BROUGHT UNDER THE FAIR LABOR STANDARDS ACT (FLSA) AGAINST CANDY CAT TOO IN CANOGA PARK, CALIFORNIA**

*Russo v. Joamar, Inc. dba Candy Cat Too, Saul Perez, Indalecio J. Perez, Jr., Doe Managers 1-3, and Does 4 through 10,* No. 2:20-cv-03939-JAK (MRWx) (C.D. Cal. April 29, 2020)

[DATE]

Dear [current or former performer at Candy Cat Too]:

A lawsuit has been filed on behalf of anyone who has performed at Candy Cat Too in Canoga Park, California, during the last three years. The enclosed consent form allows you to "opt-in" in order to participate in this lawsuit. This notice is authorized by the Court presiding over the case.

In this lawsuit, it is alleged that Candy Cat Too and other Defendants violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by allegedly misclassifying performers as independent contractors instead of employees and, as a result, did not pay performers a required hourly wage. Candy Cat Too and other Defendants also allegedly required performers to pay Defendants for certain services at the club and required performers to share their tips with employees who were not eligible to share in tips to service employees. Candy Cat Too and the other Defendants deny that they violated the FLSA. They contend that performers were properly classified as independent contractors rather than employees. Accordingly, they claim that performers need not be paid hourly wages under the FLSA, that fees paid by performers to the Club were lawful, and that the performers are not owed any money. The lawsuit is in an early stage. There have been no rulings by the Court on the merits of Plaintiff's claims.

You may be eligible to participate in this lawsuit because you have performed at Candy Cat Too in Canoga Park, California during the last three years. In order to participate in the lawsuit, and obtain any portion of any money judgment or settlement that may be entered in the lawsuit in favor of the performers, you must complete and return this consent form to the address below by no later than [DATE], 2021. If you do not return the enclosed consent form by that date, you will not be considered part of this lawsuit and will not be able to receive any such payment. If you do not participate, it will not necessarily prevent you from pursuing your own claim in a separate lawsuit. If you do participate in the lawsuit, you will be bound by any ruling entered by the Court or through a settlement reached by the parties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

If you have any questions about this lawsuit, you may contact the lawyer for Plaintiff at the following phone number or e-mail addresses:

> John P. Kristensen
> **KRISTENSEN LLP**
> 12540 Beatrice Street, Suite 200
> Los Angeles, California 90066
> Telephone: (310) 507-7924
> Fax: (310) 507-7906
> *john@kristensenlaw.com*
> *dancer@kristensenlaw.com*
>
> *Text Message: (310) 913-1201*

**This notice has been authorized by the United States District Court.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 20-3939 JAK (MRWx) | Date | March 8, 2021 |
|---|---|---|---|
| Title | Noemi Russo v. Joamar, Inc., et al. | | |

Re: Candy Cat Too Federal Lawsuit

**CONSENT TO JOIN COLLECTIVE ACTION**
Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)

1. I consent and agree to pursue my claims arising out of my performing at Candy Cat Too in connection with the above-referenced lawsuit.

2. I performed as an exotic dancer for Candy Cat Too in Canoga Park, California, from on or about _____,_____ (month, year) to on or about _____,_____ (month, year).

3. I understand that this lawsuit is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. I hereby consent, agree, and "opt in" to become a plaintiff herein and to be bound by any judgment by the Court or resolutions of this action under the federal wage law.

4. I hereby designate John P. Kristensen of Kristensen LLP at 12540 Beatrice Street, Suite 200, Los Angeles, California 90066 to represent me for all purposes in this action.

5. I also designate the named Plaintiff in this action, the collective action representative, as my agent to make decisions on my behalf concerning all aspects of the litigation.

Signature: _____
Date: _____
Name: _____
Address: _____

Telephone: _____
E-mail: _____

You may send your consent form via e-mail, fax, U.S. Mail, screenshot then e-mail or screenshot and text**:

John P. Kristensen
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: (310) 507-7924
**Text or Call: (310) 913-1201
*john@kristensenlaw.com*
*dancer@kristensenlaw.com*