John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
Alejandro Marin (SBN 329185)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: 310-507-7924
*john@kristensenlaw.com*
*jesenia@kristensenlaw.com*
*alejandro@kristensenlaw.com*

**Attorneys for Plaintiffs**

# THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| NOEMI RUSSO, an individual,<br><br>    Plaintiff,<br><br> vs.<br><br>JOAMAR, INC. dba CANDY CAT TOO, a California Corporation; SAUL PEREZ, an individual; INDALECIO J. PEREZ, JR., an individual; DOE MANAGERS 1-3; and DOES 4-10, inclusive,<br><br>    Defendants. | Case No.: 2:20-cv-03939-JAK-MRW<br><br>**COLLECTIVE ACTION**<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**<br><br>**Hearing**<br>Date: November 22, 2021<br>Time: 08:30 a.m.<br>Ctrm: 10B<br>Judge: Hon. John A. Kronstadt |

**ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, November 22, 2021 at 8:30 a.m. in Courtroom 10B of the United States District Court for the Central District of California, located at First Street Courthouse, 350 W. First Street, Courtroom 10B, Los Angeles, CA 90012, plaintiff Noemi Russo ("Plaintiff"), by and through her undersigned counsel, hereby requests approval of the settlement agreement (the "Agreement") reached between Plaintiff and defendants Joamar, Inc. dba Candy Cat Too, Saul Perez, and Indalecio J. Perez, Jr. (collectively, "Defendants") (Plaintiffs and Defendants will be referred to collectively as the "Parties").

The Agreement is attached as an exhibit to the Declaration of John P. Kristensen, filed concurrently with this Motion. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 25, Exhibit ("Ex.") 1[1]. Plaintiff submits that the Court should approve the Settlement for the reasons described below. The parties have met and conferred, pursuant to L.R. 7-3, prior to the filing this motion. Defendants do not oppose this Motion.

Dated:  August 24, 2021                    **KRISTENSEN LLP**

                                           /s/ *John P. Kristensen*
                                           John P. Kristensen
                                           Jesenia A. Martinez
                                           Alejandro Marin

                                           *Attorneys for Plaintiffs*

---

[1]    The parties have agreed upon the contents of the attached Agreement. Attached as Exhibit 1 is Noemi Russo's execution of the Agreement. Attached as Exhibit 2 is the parties' Memorandum of Understanding regarding the same. Plaintiff's counsel has been informed by Defendants' counsel that they are obtaining signatures on the Agreement today. As of the time of filing, Plaintiff's counsel has not received Defendants' executed copy, but a supplement will be filed to the Court once received.

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ..................................... 1

I.    INTRODUCTION & PROCEDURAL HISTORY ..................................... 1

II.   FACTUAL BACKGROUND .................................................... 1

III.  LEGAL GROUNDS OF PLAINTIFF'S CLAIMS ..................................... 1

IV.   THE SETTLEMENT AGREEMENT .............................................. 2

V.    STANDARD FOR APPROVAL OF FLSA SETTLEMENTS ....................... 4

VI.   APPROVAL OF THE FLSA SETTLEMENT ..................................... 5

      A.  Bona Fide Dispute ................................................ 5

      B.  Fair and Reasonable Resolution ...................................... 7

          1.  *Plaintiff's Possible Range of Recovery* .......................... 7

          2.  *The Stage of Proceedings and Amount of Discovery Completed* ...................................... 9

          3.  *Seriousness of the Litigation Risks Faced by the Parties* ...................................................... 10

          4.  *Scope of Any Release Provision in the Settlement Agreement* .................................................. 10

          5.  *Experience and Views of Counsel and Opinion of Participating Plaintiff* ...................................... 11

          6.  *Possibility of Fraud or Collusion* ............................. 11

VII.  ATTORNEYS' FEES AND COSTS ............................................ 12

VIII. CONCLUSION ........................................................... 14

1

2

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ambrosino v. Home Depot. U.S.A., Inc.*,
    No. 11-CV-1319-MDD, 2014 WL 1671489
    (S.D. Cal. Apr. 28, 2014) ....................................................................10

*Association of Disabled Americans v. Neptune Designs, Inc.*,
    469 F.3d 1357 (11th Cir.2006)...............................................................13

*Berry v. Great American Dream, Inc.*,
    No. 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014)...8

*Bivins v. Wrap It Up, Inc.*,
    548 F.3d 1348 (11th Cir. 2008)..............................................................13

*Cheeks v. Freeport Pancake House, Inc.*,
    796 F.3d 199 (2d Cir. 2015)....................................................................8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992).................................................................10

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977)..................................................................5

*Crabtree v, Volkert, Inc.*,
    No. 11-0529-WS-B, 2013 WL 593500 (S.D. Ala. Feb. 14, 2013) ...........14

*Cullens v. Georgia Dep't of Transp.*,
    29 F.3d 1489(11th Cir.1994)...................................................................13

*Glass v. UBS Financial Services, Inc.*,
    No. 06-CV-4068-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)........7

*Gonzalez v. Fallanghina, LLC*,
    No. 16-cv-01832-MEJ, 2017 WL 1374582 (N.D. Cal. Apr. 17, 2017).......6

*Greer v. Pac. Gas & Elec. Co.*,
    No. 15-CV-1066-EPG, 2018 WL 2059802 (E.D. Cal. May 3, 2018) .........7

*Harrell v. Diamond A Entm't, Inc.*,
    992 F.Supp. 1343 (M.D. Fla. 1997) ........................................................8

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)...................................................................12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3rd Cir. 1995)......................................................................5

*Jennings v. Open Door Mktg., LLC*,
    No. 15-CV-4080-KAW, 2018 WL 4773057
    (N.D. Cal. Oct. 3, 2018) ..........................................................6, 7, 9, 10

*Johnson v. MetLife, Inc.*,
    No. SACV 13-128-JLS, 2014 WL 12773568

(C.D. Cal. Nov. 6, 2014) ................................................................ 8

*Kerzich v. County of Tuolumne*,
   335 F.Supp.3d 1179 (E.D. Cal. Aug. 14, 2018) ......................... 12

*King v. My Online Neighborhood*,
   No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575
   (M.D. Fla. March 7, 2007) ............................................................ 5

*Larsen v. Trader Joe's Co.*,
   No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) .... 11

*Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*,
   18 F.3d 1527 (11th Cir. 1994) ...................................................... 5

*Levi v. Gulliver's Tavern, Incorporated*,
   No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) ............ 8

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ...................................................... 9

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ............................................ 4, 5, 7

*Madrid v. teleNetwork Partners, LTD.*,
   No. 5:17-cv-04519-BLF, 2019 WL 3302812
   (N.D. Cal. July 23, 2019) ............................................................. 6

*Mason v. Fantasy, LLC*,
   No. 13-CV-02020-RM-KLM, 2015 WL 4512327
   (D. Colo. July 27, 2015) ............................................................... 8

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*,
   No. 10-CV-5243-SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) ..... 10

*Mora v. Stars Planet, Inc., et al.*,
   No. 2:20-cv-00414-JFW-JC (C.D. Cal. March 18, 2021) ........................... 3

*Otey v. CrowdFlower, Inc.*,
   No. 12-cv-05524, 2014 WL 1477630 (N.D. Cal. Apr. 15, 2014) .............. 4

*Otey v. CrowdFlower, Inc.*,
   No. 12-cv-05524, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015) .............. 4

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ...................................................... 10

*Reynolds v. Alabama Dep't of Transp.*,
   926 F.Supp. 1448 (M.D.Ala.1995) .............................................. 13

*Rodriguez v. Nationwide Mutual Ins.Co., et al.*,
   No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796
   (C.D. Cal. Nov. 16, 2017) ............................................................. 4

*Saleh v. Valbin Corp.*,
   No. 17-CV-0593-LHK, 2018 WL 6002320

(N.D. Cal. Nov. 15, 2018) ....................................................................7

*Slezak v. City of Palo Alto*,
    No. 16-CV-03224-LHK, 2017 WL 2688224
    (N.D. Cal. June 22, 2017).........................................................9, 11, 12

*Soler v. G & U, Inc.*,
    658 F.Supp. 1093 (S.D.N.Y. 1987) ...............................................8

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290 (1985) ........................................................................8

*Trinidad v. Pret a Manger (USA) Ltd.*,
    No. 12-cv-6094 (PAE), 2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014) ......8

*Verma v. 3001 Castor, Inc.*,
    No. 13-3034, 2014 WL 2957453 (E.D. Pa. June 30, 2014).........................8

*Wolinsky v. Scholastic, Inc.*,
    900 F.Supp.2d 332 (S.D.N.Y. 2012) ............................................12

**Statutes**

29 U.S.C. § 216(b) ...............................................................1, 5, 6, 9, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION & PROCEDURAL HISTORY

Plaintiff Noemi Russo ("Russo" or "Plaintiff") was an exotic dancer at Defendants' club, Candy Cat Too. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 30; *see also* Declaration of Noemi Russo ("Russo Decl.") ¶ 5.

On April 29, 2020, Russo filed the instant action. As this Court is aware, the Parties actively engaged in discovery with three depositions, there was a Motion for Notice pursuant to 29 U.S.C. § 216(b), motions to compel and daily litigation for over a year. The parties attended a mediation on June 30, 2021 with Laurence S. Zakson. The mediation with Mr. Zakson was successful and the Parties reached the resolution as described in the Agreement for which they are now seeking approval. *See* Kristensen Decl. ¶ 27.

### II.    FACTUAL BACKGROUND

Plaintiff was an exotic dancer at Candy Cat Too's club in Winnetka, California from approximately August 2019 to December 17, 2019. The individual owners of the club were Saul Perez and Indalecio J. Perez, Jr. *See* Kristensen Decl. ¶ 28; Russo Decl. ¶ 4.

### III.    LEGAL GROUNDS OF PLAINTIFF'S CLAIMS

Plaintiff differentiated five types of claims. The first two were for failure to pay minimum wage or overtime. *See* Kristensen Decl. ¶ 29.

Also, Plaintiff contended that she was charged house fees to work, which fees were illegal kickbacks pursuant to 29 C.F.R. § 531.35. *See* Kristensen Decl. ¶ 30.

Lastly, Plaintiff also had claims for two types of tipping violations. First, the dancers were "encouraged" to tip the DJs, managers, and security. The forced tipping, Plaintiffs contends, is also a violation of 29 C.F.R. § 531.35, as it results in the dancers subsidizing the clubs' payment of wages to other employees. The

second form of claimed damages for tips was the price of individual private dances to customers which was retained by Defendants rather than being paid fully to Plaintiff. *See* Kristensen Decl. ¶ 31.

Thus, when Plaintiff mediated this matter, there were four to five levels of claimed damages that went into the valuation of her claims. There was also substantial debate between the Parties regarding the number of shifts and dates Plaintiff actually worked. *See* Kristensen Decl. ¶ 32. Defendants disagree with Plaintiff's factual assertions. *See* Kristensen Decl. ¶ 33.

## IV. THE SETTLEMENT AGREEMENT

Under the Agreement, Defendants have agreed to pay Plaintiff a gross settlement of $105,000 in two initial payments, following by ten monthly payments. The Settlement Payment will be made in the following payments: (1) an initial payment of $45,000 within 30 days of signature of this Agreement; (2) a second payment of $25,000 within 60 days of the initial payment; and (3) 10 monthly payments of $3,500 per month commencing within 30 days of the second payment. If payment is not made, the Agreement contains a stipulated judgment, enabling Plaintiff to promptly enforce judgments for the remaining amounts owed. *See* Kristensen Decl. ¶¶ 25, 34; Exs. 1. The allocation to Plaintiff is $40,000; with the remaining $65,000 being allocated to Plainitff's attorney's fees and costs. *See* Kristensen Decl. ¶ 35. As shall be reflected below, Plaintiff's allocation is nearly **double** her estimated damages and constitutes a full satisfaction of her claims.

Russo worked at Candy Cat Too from approximately August 2019 to December 17, 2019. During this period, she would work five nights a week, or approximately 20 days a month at Candy Cat Too over this time period. Russo worked for approximately 20 shifts a month for 5 months, which is 100 shifts. Ms. Russo would work approximately eight-hour shifts. She was forced to pay a maximum house fee of approximately $20 per shift. She was forced to pay the DJ,

doorman and manager approximately $50 per night total. For non-stage dances, Ms. Russo would be required to give the club $10 of every $25-$40 she earned per dance (depending on the time of day). Ms. Russo estimates she performed an average of 4 non-stage dances per shift.. *See* Kristensen Decl. ¶ 36.

Based on these numbers, Plaintiff estimates her damages as follows:

| | |
|---|---|
| Minimum Wages (Liquidated): | $11,600.00 |
| House Fees: | $2,000.00 |
| Forced Tip-Outs: | $5,000.00 |
| Stolen Dance Income: | $4,000.00 |
| **Total Loss:** | **$22,600.00** |

*See* Kristensen Decl. ¶ 37.

Plaintiff's allocation of $40,000 constitutes a full satisfaction of her claims in this action. *See* Kristensen Decl. ¶ 38.  Defendants' records had different amounts of shifts for each dancer. Plaintiff did not have strong records of the dates or the amount of shifts sheworked. That played a role in weighing the value of each claim. *See* Kristensen Decl. ¶ 39.

Plaintiff's counsel has significant experience in litigating employment cases. The settlement amounts and terms resulted in significant resolutions for Plaintiff. *See* Kristensen Decl. ¶¶ 2-37. Plaintiff's counsel resolved a similar case for Silver Reign Gentlemen's Club for $775,000. The 14 Plaintiffs in the Silver Reign case had more shifts overall and larger individual claims. That settlement was recently approved by Judge Walter. *See Mora v. Stars Planet, Inc., et al.*, No. 2:20-cv-00414-JFW-JC, Dkt. 81 (C.D. Cal. March 18, 2021).

Plaintiff's counsel incurred $76,510 in fees and are recovering $4,403.08 in costs. Plaintiff's counsel has a lodestar of $76,510 and are requesting $60,596.92 in fees. Therefore, the lodestar is greater than the recovered amount. *See* Kristensen Decl. ¶ 40, Exs. 3-5.

Plaintiff's counsel litigated this case extensively. The settlement amount is a significant amount and takes into account the amount of time litigated and the ability to reach resolution and collect, which is relevant in this current unknown economic environment. *See* Kristensen Decl. ¶ 41. In exchange for the consideration described above, Plaintiff has agreed to dismiss her causes of action for alleged violations of the FLSA and any state wage and hour claims stemming from Plaintiff's employment with the Defendants at issue in the Complaint. *See* Kristensen Decl. ¶¶ 25, 42; Ex. 1.

## V. STANDARD FOR APPROVAL OF FLSA SETTLEMENTS

"When employees bring a private action for back wages under the [FLSA], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Because "[t]he Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval," district courts in this Circuit widely follow the Eleventh Circuit's *Lynn's Food Stores* standard. *Rodriguez v. Nationwide Mutual Ins.Co., et al.*, No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796, at *1 (C.D. Cal. Nov. 16, 2017); *see also Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at *3 & n.5 (N.D. Cal. Apr. 15, 2014) (collecting cases applying *Lynn's Food Stores*).

Under *Lynn's Food Stores*, a district court may approve an FLSA settlement only if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015) (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation."

*Lynn's Food Stores*, 679 F.2d at 1354. Accordingly, FLSA settlements require the supervision of the Secretary of Labor or the district court. *See Lynn's Food Stores*, 679 F.2d at 1352-53. The FLSA also requires that a settlement agreement include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

Under *Lynn's Food Stores*, the following factors are considered: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

When considering these factors, the Court should keep in mind the "'strong presumption' in favor of finding a settlement fair." *King*, 2007 WL 737575, at *3 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (other internal citations omitted)). As discussed below, those factors strongly favor approval of this settlement.

## VI. APPROVAL OF THE FLSA SETTLEMENT

### A. Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3,

2018) (quoting *Gonzalez v. Fallanghina, LLC*, No. 16-cv-01832-MEJ, 2017 WL
1374582, at \*2 (N.D. Cal. Apr. 17, 2017)). "That is, there must be some doubt
whether the plaintiffs will be able to succeed on the merits of their FLSA claims."
*Madrid v. teleNetwork Partners, LTD.*, No. 5:17-cv-04519-BLF, 2019 WL
3302812, at \*3 (N.D. Cal. July 23, 2019).

The Court should approve the settlement because it reflects a reasonable
compromise of bona fide dispute regarding Defendants' alleged FLSA liability.
There was no collusion in reaching the Agreement. The Parties were adequately
represented by competent counsel experienced in litigating cases under the FLSA,
and the Agreements reached were the result of good-faith, arms' length
negotiation between the Parties aided by mediator Laurence S. Zakson. Mr.
Kristensen has tried multiple employment cases and obtained substantial
settlements against employers, including against another exotic dance club in
excess of a million dollars. Mr. Kristensen has been appointed class counsel,
including three times in 2019 alone. Kristensen Decl. ¶¶ 2-24, 43.

The Parties have strenuously different opinions about the classification of
the dancers as employees or independent contractors and whether the dance fee
charged by and collected by the Defendants belonged to the Defendants or was a
tip belonging to Plaintiff. The Parties engaged in discovery, including the
production of documents, 3 depositions, substantial discovery law and motion,
and a Motion for Notice pursuant to section 216(b) of the FLSA. Counsel were
cognizant and aware of each other's arguments and positions pertaining to
employee classification. The Parties attended the June 30, 2021 mediation in good
faith. With the help of an experienced mediator, the Parties defended their
positions about the disputed aspects of the case and a resolution was ultimately
reached. *See* Kristensen Decl. ¶ 44.

Because the Parties disputed these aspects of the case, the purpose of the
bona fide dispute requirement has been satisfied here. *See Saleh v. Valbin Corp.*,

No. 17-CV-0593-LHK, 2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018) (citing *Lynn Food Stores*, 679 F.2d at 1353 n.8) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties.").

## B.   Fair and Reasonable Resolution

To determine whether the settlement is fair and reasonable, the Court looks to the "totality of the circumstances" and the "purposes of [the] FLSA." *Selk*, 159 F.Supp.3d at 1173. In making this determination, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See*, *e.g.*, *id.*; *Jennings*, 2018 WL 4773057, at *4. Plaintiffs will address each of these factors accordingly.

It should be noted that the litigation began in the midst of the COVID-19 pandemic. This played a considerable role in the final resolution of the matter. The lengthy time period of the payments (one year) evidences that Plaintiff was able to obtain a substantial amount that required payment on terms.

### 1.   *Plaintiff's Possible Range of Recovery*

Regarding Plaintiff's range of possible recovery, courts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable. *See*, *e.g.*, *Jennings*, 2018 WL 4773057, at *5–*6; *Selk*, 159 F.Supp.3d at 1175; *Glass v. UBS Financial Services, Inc.*, No. 06-CV-4068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009); *Greer v. Pac. Gas & Elec. Co.*, No. 15-CV-1066-EPG, 2018 WL 2059802, at *8 (E.D. Cal. May 3, 2018); *Johnson v. MetLife, Inc.*, No. SACV 13-

128-JLS, 2014 WL 12773568, at *9 (C.D. Cal. Nov. 6, 2014).

Plaintiff's counsel anticipated that Russo's damages, had the case proceeded to trial, to be in the $23,000 range. *See* Kristensen Decl. ¶ 37. Here, Plaintiff obtained a recovery of $40,000; nearly double. The risk for Defendants was that, in a fee-bearing case, with a real likelihood of liability, the attorneys' fees would dwarf the damages.[2] *See* Kristensen Decl. ¶ 45.

The FLSA structure was intentionally designed by Congress as a remedial measure to incentivize and encourage private attorneys to pursue lower damage wage and hour claims with clear liability. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [FLSA]." *Soler v. G & U, Inc.*, 658 F.Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes." *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014).

_____

[2] Multiple district courts have found an employment relationship and required clubs to pay dancers a minimum wage. *See Harrell v. Diamond A Entm't, Inc.*, 992 F.Supp. 1343, 1348 (M.D. Fla. 1997); *Berry v. Great American Dream, Inc.*, No. 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014) (Gentlemen's Club collaterally estopped from re-litigating issue that entertainers are independent contractors rather than employees); *Mason v. Fantasy, LLC*, No. 13-CV-02020-RM-KLM, 2015 WL 4512327, at *13 (D. Colo. July 27, 2015); *Verma v. 3001 Castor, Inc.*, No. 13-3034, 2014 WL 2957453, at *5 (E.D. Pa. June 30, 2014); *Levi v. Gulliver's Tavern, Incorporated*, No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) (granting dancer plaintiff's partial summary judgment that they are employees under the FLSA)..

The Agreement reflects a substantial award to Plaintiff. The resolution is setting a benchmark for other settlements in FLSA dancers cases. Counsel spent considerable time litigating the matter which is evidenced in the lodestar of $76,510. Plaintiff's counsel's skill, tenacity and the potential of a large attorneys' fees award contributed to the overall settlement. This settlement is very favorable to Plaintiff, and in light of the work performed in the lawsuit and the juncture of the settlement in the litigation, the settlement amount is reasonable. Plaintiff's counsel lodestar exceeds the requested fee by nearly $16,000. *See* Kristensen Decl. ¶¶ 40, 46; Exs. 3-5.

## 2.    *The Stage of Proceedings and Amount of Discovery Completed*

The Court must next assess "the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Jenning*s, 2018 WL 4773057, at *5 (quoting *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *4 (N.D. Cal. June 22, 2017)). If the parties have "sufficient information to make an informed decision about [the] settlement, this factor weighs in favor of approval." *Id.* (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

The Parties had engaged in written discovery and depositions (with more planned) by the time the mediation took place. As the Court is aware, the Parties had fully briefed several motions before the Court, including the Motion for Notice pursuant to section 216(b) of the FLSA and Plaintiff's motion to compel further discovery responses. The settlement is the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiation between counsel. The Parties had a good understanding of the merits of their positions by the time of the mediation, which led to the settlement reached. *See* Kristensen Decl. ¶ 50.

### 3.     *Seriousness of the Litigation Risks Faced by the Parties*

Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Jennings*, 2018 WL 4773057, at *5. Several facts in this case potentially jeopardize Plaintiff's recovery should this case proceed to trial, including Defendants' written employment policies and testimony from supervisors contradicting Plaintiff's claims, and Plaintiff's potential inability to prove that Defendants' alleged violations were willful. Accordingly, further litigation might result in Plaintiff recovering less than the Settlement or perhaps nothing at all, so this factor weighs in favor of approving the FLSA settlement. The financial effects of COVID-19 and the ability to collect were concerns for Plaintiff. *See* Kristensen Decl. ¶ 47.

### 4.     *Scope of Any Release Provision in the Settlement Agreement*

Courts in this Circuit have rejected blanket releases of all potential claims against the employer for all unlawful acts whatsoever. *See*, *e.g.*, *McKeen-Chaplin v. Franklin Am. Mortg. Co*., No. 10-CV-5243-SBA, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012) (ruling that the plaintiffs failed to demonstrate that it would be fair and reasonable for a court to enforce a general release provision of all claims related to their employment in an FLSA settlement); *Ambrosino v. Home Depot. U.S.A., Inc*., No. 11-CV-1319-MDD, 2014 WL 1671489, at *2-3 (S.D. Cal. Apr. 28, 2014) (same). However, when a district court in the Ninth Circuit approves an FLSA collective action settlement, it may approve a release of any claims sufficiently related to the current litigation. *See Selk*, 159 F.Supp.3d at 1178–79; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287–89 (9th Cir. 1992)).

The Settlement Agreement here is similar to others approved in this District. *See Johnson v. The Strip Joint*, No.8:19-cv-01623-JVS-KES, Dkt. 29 (Jan. 31,

2020); *see also Woodmore v. Solitaire Holdings, LLC dba Knockouts*, No. 2:19-cv-09017-RGK-AGR, Dkt. 17 (Feb. 9, 2020); *see also Mora v. Stars Planet, Inc., et al.*, No. 2:20-cv-00414-JFW-JC, Dkt. 81 (C.D. Cal. March 18, 2021). As such, the Settlement Agreement here does not weigh against approval. *See* Kristensen Decl. ¶ 48.

**5.**      ***Experience and Views of Counsel and Opinion of the Participating Plaintiff***

"In determining whether a settlement is fair and reasonable, '[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases.'" *Slezak*, 2017 WL 2688224, at *5 (quoting *Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014)).

Plaintiff's counsel and Defendants' counsel have substantial experience litigating wage and hour cases and handling complex and class actions. Counsel for the Parties knew the strengths and weakeneses of the opposing side's case as can be evidenced by the fully briefed motions before the Court. With the help of an experienced mediator, well-versed in FLSA cases, the Parties were able to reach a Settlement. Plaintiff's counsel's substantial experience and judgment resulted in this extraordinary Settlement. Additionally, Plaintiff has been made aware of the terms of the settlement and has signed the settlement agreement. Accordingly, this factor weighs in favor of approval. *See* Kristensen Decl. ¶¶ 2-49; Ex. 1.

**6.**      ***Possibility of Fraud or Collusion***

When considering this factor, courts may look for indications that Plaintiff's counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation" or for "evidence of more 'subtle signs' of collusion, such as 'when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class

counsel are amply rewarded.'" *Selk*, 159 F. Supp. 3d at 1180 (quoting *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011)).

The proposed Settlement was the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiations between counsel, aided by well-known and experienced mediator Laurence S. Zakson. While Plaintiff's counsel is receiving payment of reimbursable costs and attorneys' fees from the Settlement, there is nothing out of the ordinary in this arrangement. *See Slezak*, 2017 WL 2688224, at *5 ("[C]ounsel is receiving a substantial fee. However, the class is also receiving a significant monetary benefit."); *Selk*, 159 F. Supp. 3d at 1179-80 ("[T]he amount of the individual settlement payments to be received by opt-in members is based on an analysis of employee time records and an estimate of the degree of under-compensation during the relevant period. This approach guards against the arbitrariness that might suggest collusion." (citation omitted)). This factor therefore weighs in favor of approval. *See* Kristensen Decl. ¶ 66.

## VII.   ATTORNEYS' FEES AND COSTS

In an FLSA action, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or the plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F.Supp.3d at 1180 (quoting *Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012)). "Typically, attorneys' fees under the FLSA are determined using the lodestar medthod. . . . Lodestar amounts are presumed to be reasonable." *Kerzich v. County of Tuolumne*, 335 F.Supp.3d 1179, 1185-86 (E.D. Cal. Aug. 14, 2018).

It is well established that "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The product of these two figures is the

lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc*., 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted). "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward." *Cullens v. Georgia Dep't of Transp*., 29 F.3d 1489, 1492 (11th Cir.1994) (citation omitted); s*ee also Association of Disabled Americans v. Neptune Designs, Inc*., 469 F.3d 1357, 1359 (11th Cir.2006) ("In calculating a reasonable attorney's fee award, the court must multiply the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services to reach a sum commonly referred to as the 'lodestar.' . . . The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit."); *Reynolds v. Alabama Dep't of Transp*., 926 F.Supp. 1448, 1453 (M.D. Ala. 1995) ("After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upward or downward."). Here, Plaintiff is requesting approval of an allocation of fees consisting of nearly $16,00 less than the lodestar.

Concurrently with this Motion, Plaintiff's counsel will submit detailed billing entries demonstrating that a substantial amount of time and resources was needed to achieve this extraordinary result revealing a lodestar amount of $76,510. As such, Plaintiff's counsel is merely requesting a negative multiplier of 0.79 and seeking approximately $16,000 less than their lodestar. Further, this was a hard-fought case with experienced opposing counsel who were ready to try this case on the merits in trial, which would have exponentially increased the amount of attorneys' fees sought. *See* Kristensen Decl. ¶ 51.

Plaintiff's counsel took this case on a contingency fee basis facing uncertainty as to whether any recovery would be achieved at Plaintiff's counsel's

cost. Plaintiff spent considerable time and effort litigating this matter in good faith with the possibility of no recovery, which is oftentimes common in contingency fee cases. It is widely known that in some cases there is no recovery while in others there is a recovery and a multiplier on counsel's lodestar. Plaintiff incurred costs of $4,403.08 and attorney's fees of $76,510. The fact that Plaintiff's counsel's experience and time resulted in this extraordinary settlement emphasizes that the attorney's fees and costs here are reasonable and appropriate. *See Crabtree v, Volkert, Inc.*, No. 11-0529-WS-B, 2013 WL 593500, at *7-8 (S.D. Ala. Feb. 14, 2013) (approving an upward adjustment of the Plaintiff's counsel's lodestar amount given the contingency nature of the lawsuit, the merits of the case, and the settlement reached). Thus, the proposed allocation of attorney's fees does not undermine the fairness or reasonableness of the amounts received by Plaintiff for purposes of this FLSA settlement. *See* Kristensen Decl. ¶52.

## VIII. CONCLUSION

For the foregoing reasons, the Parties jointly request that the Court approve the Agreement and enter the proposed Order filed concurrently herewith.

Dated:  August 24, 2021          **KRISTENSEN LLP**

/s/ *John P. Kristensen*
John P. Kristensen
Jesenia A. Martinez
Alejandro Marin

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Tuesday, August 24, 2021 a true and correct copy of the **PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT** was served via CM/ECF upon all participants of record, including the following parties, pursuant to Fed. R. Civ. P. 5:

Fadi K. Rasheed
Robert A. Orozco
Philip A Toomey
**LEECH TISHMAN FUSCALDO & LAMPL, INC.**
2041 Rosecrans Avenue, Suite 300
El Segundo, CA 90245
Email: frasheed@leechtishman.com
Email: rorozco@leechtishman.com
Email: ptoomey@leechtishman.com

***Counsel for Defendants***

*/s/ Alejandro Marin*
Alejandro Marin